# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| LARRY D. WEBER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18-cv-00037-RLW |
| | ) |
| ANNE L. PRECYTHE, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Larry D. Weber for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2).[1] Having reviewed the financial information submitted by plaintiff, the Court has determined that he lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $35.04. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

## **28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's

---

[1] Docket No. 2 is an Affidavit in Support of Request to Proceed In Forma Pauperis that the Court has construed as a Motion for Leave to Proceed In Forma Pauperis.

account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion to proceed in forma pauperis, plaintiff has submitted a certified inmate account statement. (Docket No. 3). The certified inmate account statement shows an average monthly deposit of $175.21. The Court will therefore assess an initial partial filing fee of $35.04, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation").

2

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be construed within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is currently an inmate at Tipton Correctional Center in Tipton, Missouri. At the time the events complained of took place, plaintiff was incarcerated at Moberly Correctional Center in Moberly, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. His complaint consists of a Court-provided form and a number of attachments, including a conduct violation report, a disciplinary action report, an informal resolution request, an informal resolution response, and a letter.[2] He names as defendants Anne Precythe, the Director of the Missouri Department of Corrections; Dean Minor, the Warden of Moberly Correctional Center; Teresa Thornburg, the Deputy Warden; and Boshko Ognenovski, a correctional officer. Defendants are sued in both their official and individual capacities.

---

[2] The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

3

Plaintiff alleges that on March 3, 2018, he was accused of violating rule 11.2 governing the introduction of controlled substances into the prison, and rule 19.3, governing the destruction of evidence by ingestion. (Docket No. 1 at 6-7). This violation allegedly occurred during plaintiff's visit with a woman named Maggie Jean Cotton. (Docket No. 1 at 10). Plaintiff states that he was accused of "swallowing [a] round white substance" while visiting with Ms. Cotton. According to the conduct violation report attached to the complaint, defendant Ognenovski observed plaintiff's visit on a video monitor. (Docket No. 1-1 at 1). Officer Ognenovski allegedly saw Ms. Cotton reach inside her bag and pass an item to plaintiff, whereupon plaintiff placed the item inside his mouth.

Following the visit, plaintiff was placed into a "dry cell" in the segregation unit. (Docket No. 1 at 6). A dry cell is an otherwise empty room that has a stool with a trap in the bottom. (Docket No. 1 at 10). The trap at the bottom is used to capture contraband coming from a bowel movement. While an inmate is in the dry cell, his movements are continually watched by correctional staff. Immediately upon being placed in the dry cell, plaintiff was notified of his conduct violations and was read his rights. (Docket No. 1 at 7).

Plaintiff states that he was kept in the dry cell for forty-eight hours. During this time, he gave a urine sample and a stool sample. He alleges that the results of both samples "were negative." Nevertheless, plaintiff was given the following sanctions following a disciplinary hearing on March 6, 2018: thirty days disciplinary segregation; a referral to the administrative segregation committee and the substance abuse program; ninety days of no contact visits; and a recommendation that Ms. Cotton be removed from plaintiff's visitor list.[3] (Docket No. 1 at 6).

---

[3] Plaintiff has attached the disciplinary action report from this hearing. (Docket No. 1-1 at 2). The report states that Ms. Cotton was observed retrieving a small item, white and round, from her coin purse. She handed this item to plaintiff who placed it in his mouth. Based on the size, shape, and concealment of the item, it was determined that this item was a controlled substance. Plaintiff denies this, and stated that he did not swallow anything, that he

4

Deputy Warden Thornburg modified the sanctions to remove Ms. Cotton from plaintiff's visitor list. All sanctions were thereupon approved by Warden Minor.

Plaintiff asserts that he was wrongfully accused of violating rules 11.2 and 19.3. Specifically, he insists that because his urine and stool samples were negative for illicit substances, defendants have not proven that he committed a violation. (Docket No. 1 at 7). He states that the "truth of the matters is that my visitor Ms. Maggie Jean Cotton gave [me] 'Air Head Candy.'"

Based on the foregoing facts, Plaintiff brings three separate causes of action. First, he alleges that defendants' refusal to reinstate Ms. Cotton to his visitor list is a violation of plaintiff's First Amendment rights to free association and expression. Second, he states that defendants' refusal to reinstate Ms. Cotton to his visitor list is a violation of Ms. Cotton's First Amendment rights to free association and expression. Finally, plaintiff claims that defendants' refusal to put Ms. Cotton back on his visitor list violates his rights under the Fifth Amendment. (Docket No. 1 at 8). Further, he asserts that defendants' decision "was arbitrary and capricious and not based upon any compelling government interest of any rational relationship to the purpose and exigencies of imprisonment."

Plaintiff seeks a declaratory judgment that the defendants' acts, policies, and practices violated his rights under the United States Constitution. He also seeks a preliminary and permanent injunction that prohibits defendants from denying plaintiff visits with Ms. Cotton; prohibits defendants from transferring plaintiff to any other institution without his express consent during his lawsuit; and requiring Director Precythe to submit revised visitation policies that comport with the First and Fifth Amendments. (Docket No. 1 at 8-9).

---

reached up to scratch his jaw, and that he only consumed what he was eating. He also states that he was drug tested while in the dry cell.

## Discussion

Plaintiff alleges that defendants Precythe, Minor, Thornburg, and Ognenovski violated his right to free association, violated Ms. Cotton's right to free association, and violated his right to due process by removing Ms. Cotton from his visitor list and refusing to reinstate her.

### A. Plaintiff's Official Capacity Claims

Plaintiff's official capacity claims against defendants Precythe, Minor, Thornburg, and Ognenovski must be dismissed.

A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"); and *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official...capacities sues only the public employer").

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71. *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983").

Defendants are all employees of the Missouri Department of Corrections. The Missouri Department of Corrections is a state agency of the State of Missouri. Thus, plaintiff's official capacity claims are actually claims against the state. As noted above, a state is not a "person" for purposes of 42 U.S.C. § 1983. "Section 1983 provides a cause of action against 'persons' only." *See Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991). Since the State of Missouri is not a person, plaintiff has failed to state a § 1983 claim.

Even if the Missouri Department of Corrections is assumed to be a § 1983 "person," plaintiff has still failed to assert the Department's liability.

A local governing body can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). The liability of a governmental entity may attach if the alleged constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

Plaintiff thus has three ways in which he can assert the liability of a governmental entity. However, his complaint fails to mention any of them. He alleges no facts concerning any official policy, unofficial custom, or deliberately indifferent failure to train or supervise, much less that any policy or custom or failure to train caused a violation of his constitutional rights. As such, plaintiff has not stated a claim of liability against the Department of Corrections. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a

policy or custom" that caused the alleged deprivation of plaintiff's rights). Accordingly, for the reasons discussed above, plaintiff's official capacity claims are dismissed.

## B. Defendants Precythe and Ognenovski

Plaintiff's individual capacity claims against defendants Precythe and Ognenovski must be dismissed. In a § 1983 case, liability is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

Plaintiff does not allege the direct responsibility of Director Precythe or Officer Ognenovski for any alleged violation of his constitutional rights.

As to Director Precythe, plaintiff seems to presume her responsibility as a result of her role as Director of the Missouri Department of Corrections. He states that Director Precythe is "legally responsible for the overall operation of the Department of Corrections and each institution under its jurisdiction." However, vicarious liability is inapplicable to § 1983 suits. *See Marsh*, 902 F.3d at 754. That is, plaintiff cannot assert a superior's liability based solely on the acts of subordinates. Director Precythe's position of authority, without more, is insufficient to state a claim against her in her individual capacity. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (stating that "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

As to Officer Ognenovski, he is barely mentioned, aside from being identified as a correctional officer. From the attached conduct violation report, though, it is apparent that Ognenovski witnessed plaintiff's rule violations. Nonetheless, plaintiff never alleges that Officer

8

Ognenovski did anything wrong. As a correctional officer, it is within Officer Ognenovski's duties to be alert for inmates attempting to bring controlled substances into the facility, and to take steps to prevent it from occurring. At most, there is the implication that Officer Ognenovski was mistaken in believing that plaintiff ingested a controlled substance. There is no indication, however, that Officer Ognenovski acted with the intent of framing plaintiff for something he did not do. As such, plaintiff has failed to state a claim because he has not alleged that Officer Ognenovski violated his constitutional rights. *See Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016) ("To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States").

Accordingly, for the reasons discussed above, plaintiff's individual capacity claims against defendants Precythe and Ognenovski must be dismissed.

### C. Plaintiff's First Amendment Free Association and Expression Claims

Plaintiff's claims against defendants Minor and Thornburg in their individual capacities for violating his First Amendment rights to free association and expression must be dismissed.

The lawful incarceration of an inmate brings about the necessary withdrawal or limitation of many rights and privileges, which is justified by the considerations underlying the penal system. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). Of those rights and privileges, "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).

The Supreme Court has not held that any right to intimate association is altogether terminated by incarceration. *Id.* However, substantial deference is accorded to the professional judgment of prison administrators who have the responsibility of defining the legitimate goals of a corrections system and determining the most appropriate means to accomplish them. *Id.* at 132.

9

*See also Bumgarner v. Bloodworth*, 768 F.2d 297, 301 (8th Cir. 1985) (stating that visitation rights are "rights" with respect to which the Supreme Court has given broad discretionary authority to administrators in order to manage their prisons). To that end, for instance, a prisoner does not have a liberty interest in contact visitation. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). Furthermore, a prisoner's "loss of visitation privileges is within the ordinary incidents of confinement and cannot be considered an atypical and significant hardship." *See Ware v. Morrison*, 276 F.3d 385, 387 (8th Cir. 2002) (stating that suspension of plaintiff's visitation privileges did "not fall outside the expected parameters of incarceration").

Warden Minor and Deputy Warden Thornburg are accused of approving the sanctions levied against plaintiff. Specifically, Deputy Warden Thornburg approved the recommendations contained in the disciplinary action report, and also directed that Ms. Cotton be removed from plaintiff's visitor list. Warden Minor then approved the disciplinary action report as modified by Deputy Warden Thornburg.

The actions taken by Warden Minor and Deputy Warden Thornburg do not constitute the violation of a constitutional right. The temporary suspension of plaintiff's visiting privileges, and the removal of Ms. Cotton from his visitor list, were the result of plaintiff being sanctioned for allegedly ingesting a controlled substance. The discipline imposed on plaintiff was directly related to his purported rule violation, and nothing in the complaint suggests that this discipline constituted an "atypical and significant hardship." *See Ware*, 276 F.3d at 387. To the contrary, such a sanction seems well within the expected parameters of incarceration. Moreover, as noted above, prison administrators are accorded substantial deference in managing their prison. Plaintiff has not demonstrated that Warden Minor or Deputy Warden Thornburg have abused their authority, and his facts certainly do not support his claim that they participated in a

10

"concerted and systematic effort" to "deprive plaintiff of constitutionally secured rights." Accordingly, plaintiff's individual capacity claims against Warden Minor and Deputy Warden Thornburg for violating his rights to free association and expression must be dismissed.

### D. Plaintiff's First Amendment Free Association and Expression Claims on Behalf of Ms. Cotton

Plaintiff's claim asserting that defendants violated Ms. Cotton's rights to free association and expression must be dismissed. Standing is a jurisdictional requirement that can be raised by the court sua sponte at any time during litigation. *Delorme v. U.S.*, 354 F.3d 810, 815 (8th Cir. 2004). In general, to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Moreover, a non-attorney pro se litigant may not represent someone else in federal court. *See* 28 U.S.C. § 1654; and *Iannaccone v. Law*, 142 F.3d 553, 558 (2nd Cir. 1998) (stating that "because pro se means to appear for one's self, a person may not appear on another's behalf in the other's cause...A person must be litigating an interest personal to him").

Plaintiff has filed this action pro se and there is no indication that he is a licensed attorney. To meet the requirement of standing, he must assert his own legal rights, not the rights of others. Moreover, as a pro se plaintiff, he is not allowed to appear on behalf of another person or represent that person's interests. Accordingly, plaintiff's claims on behalf of Ms. Cotton must be dismissed.

### E. Plaintiff's Due Process Claims

Plaintiff's claims against defendants Minor and Thornburg in their individual capacities for violating his due process rights must be dismissed.

11

Plaintiff alleges that defendants violated his Fifth Amendment rights in their decision not to allow visitation between him and Ms. Cotton. The Court construes this cause of action as arising under the Due Process Clause of the Fourteenth Amendment.

A protected liberty interest may arise from two sources: the Due Process Clause and the laws of the states. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). Unfettered visitation is not directly guaranteed by the Due Process Clause. *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 461 (1989). Specifically, the "denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence...and therefore is not independently protected by the Due Process Clause." *Id.* Accordingly, the Due Process Clause does not confer upon plaintiff a liberty interest in visiting with Ms. Cotton.

When the Due Process Clause itself does not confer a liberty interest, the inquiry into whether state law has created a protected interest turns on whether the challenged conditions impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A state creates a protected liberty interest by placing substantive limitations on official discretion. *Kentucky Dep't of Corrs.*, 490 U.S. at 462.

Plaintiff does not identify any substantive limitations on official discretion such as would create a protected liberty interest. Instead, the basis of his claim is that he did not actually violate any rules, to wit: that Ms. Cotton never provided, and plaintiff did not ingest, a controlled substance. Therefore, according to plaintiff, the refusal of defendants to reinstate Ms. Cotton to his visitor list is arbitrary and capricious.[4] In essence, plaintiff is arguing that his sanctions were unconstitutional because he was not guilty, despite the results of his disciplinary hearing. Plaintiff, however, does not have a protected liberty interest in the result of his disciplinary

---

[4] Plaintiff does not allege that the disciplinary hearing itself, or the manner in which it was conducted, violated his right to due process.

12

hearing. *See Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (stating that prisoner had no protected liberty interest in the outcome of his routine disciplinary proceeding, and district court properly dismissed his claims against the defendants who were involved in this proceeding). Moreover, he has not demonstrated that the removal of Ms. Cotton from his visitor list comprises "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484. To the contrary, the removal of a visitor from an inmate's visitor list for allegedly attempting to bring contraband into the facility appears to be an ordinary occurrence in a correctional institution. Accordingly, plaintiff's claims against defendants Minor and Thornburg in their individual capacities for violating his due process rights must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $35.04 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim and/or because it is legally frivolous subject to 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

Dated this 13th day of November, 2018.

*Ronnie L. White*

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE